UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PROFESSIONAL INVESTIGATING & CONSULTING AGENCY, INC., 551 South Third Street Columbus, Ohio 43215, <br><br> Plaintiff, <br><br> v. <br><br> TIGERSWAN, LLC, c/o Registered Agents Inc., Statutory Agent 6545 Market Avenue North, Suite 100 North Canton, Ohio 44721 <br><br> Defendant. | Case No.: 17 - cv - 1120 <br><br> Judge: _____ <br><br> **COMPLAINT** <br><br> Brian A. Coulter (0092158), Trial Attorney <br> SHUMAKER, LOOP & KENDRICK, LLP <br> 41 South High Street, Suite 2400 <br> Columbus, Ohio 43215 <br> Telephone:   614.463.9441 <br> Facsimile:   614.463.1108 <br> E-mail:   bcoulter@slk-law.com <br><br> Attorney for Plaintiff Professional Investigating & Consulting Agency, Inc. <br><br> Of Counsel: <br><br> J. Todd Timmerman (FL Bar No. 0956058) <br> Mindi M. Richter (FL Bar No. 00044827) <br> Jeffrey B. Fabian (FL Bar No. 0085868) <br> SHUMAKER, LOOP & KENDRICK, LLP <br> 101 East Kennedy Boulevard, Suite 2800 <br> Tampa, Florida 33602 <br> Telephone:   813.229.7600 <br> Facsimile:   813.229.1660 <br> E-mail:   ttimmerman@slk-law.com <br>             mrichter@slk-law.com <br>             jfabian@sIk-law.com |

Plaintiff, Professional Investigating & Consulting Agency, Inc. ("PICA"), by and through its undersigned attorneys, files this Complaint against Defendant, TigerSwan, LLC ("TigerSwan"), and states as follows:

**Nature of this Action**

1. This is a civil action by PICA against TigerSwan for trademark infringement and unfair competition arising under the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and

state common law, along with an action for cancellation of a federal trademark registration fraudulently procured by TigerSwan and asserted against PICA. Founded in 1982, PICA is a world leader in brand protection, loss prevention, personnel protection, risk management, and security consulting. In or around 2011, PICA launched a new security service known as GUARDIAN ANGEL® whereby PICA protects, tracks, locates, and monitors drivers, vehicles, and cargo for clients, to track their geographical location for emergency response purposes and recovery, through the use of a remote monitoring center. PICA provides emergency response alarm monitoring of GPS tracking devices, cell phones, and panic notification devices on drivers and vehicles to track their geographical location and notify emergency responders when appropriate. PICA federally registered the GUARDIAN ANGEL® mark for these services in 2015. TigerSwan is a company that worked with PICA in various capacities from 2009 to 2014. During this time, TigerSwan did not offer any services under the mark GUARDIAN ANGEL, but it did become aware of PICA's GUARDIAN ANGEL® program. At some point in 2015, after the termination of the relationship between PICA and TigerSwan, TigerSwan began offering services in competition with PICA's GUARDIAN ANGEL® program under the mark GUARDIANANGEL, and through false and fraudulent representations to the United States Patent and Trademark Office ("USPTO") TigerSwan procured its owned federal registration of GUARDIANANGEL, which TigerSwan is now attempting to assert against PICA. PICA, by this action, seeks redress for TigerSwan's infringement and unfair competition arising from the use of its wrongfully registered GUARDIANANGEL mark, and cancellation of TigerSwan's federal registration.

**Parties, Jurisdiction, and Venue**

2. Plaintiff Professional Investigating & Consulting Agency, Inc. is an Ohio corporation with its principal place of business in Columbus, Ohio. Plaintiff sometimes does business under the fictitious name PICA Corporation.

3. Defendant TigerSwan, LLC is a Delaware limited liability company with its principal place of business in North Carolina. Defendant was formerly a Colorado corporation, but converted to a Delaware limited liability company. Defendant is registered to do business as a foreign limited liability company in the State of Ohio and has a registered agent for the service of process in the State of Ohio.

4. The federal law claims of trademark infringement, unfair competition, and cancellation of a registered trademark asserted in this action arise under the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*. This Court has original jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) in that this Complaint states an action based upon a federal question relating to trademarks.

5. The state law claims of common law trademark infringement and common law unfair competition asserted in this action are so related to the federal law claims asserted in this action that they form part of the same case or controversy under Article III of the United States Constitution. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

6. This Court also has original jurisdiction over the state law claims of common law trademark infringement and common law unfair competition asserted in this action pursuant to 28 U.S.C. § 1338(b) because they are joined with substantial and related claims asserted under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

7. This Court also has diversity jurisdiction over the state law claims of common law trademark infringement and common law unfair competition asserted in this action pursuant to 28 U.S.C. § 1332(a)(1) because PICA and TigerSwan are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over TigerSwan pursuant to O.R.C. § 2307.382 in that during relevant periods TigerSwan: (1) transacted business in Ohio; (2) contracted to supply services in Ohio; (3) committed tortious injury by acts in Ohio; and (4) caused tortious injury in Ohio by acts outside Ohio committed with the purpose of injuring persons, when TigerSwan might have reasonably expected that some person would be injured thereby in Ohio, namely PICA.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because TigerSwan, having subjected itself to personal jurisdiction in this judicial district, resides in this judicial district (see 28 U.S.C. § 1391(c)), and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.

## Common Factual Allegations

### PICA's Guardian Angel® Services

10. PICA was founded in Ohio in 1982. Since that time, PICA has evolved into a world leader in brand protection, loss prevention, personnel protection, risk management, and security consulting. PICA protects companies with creative and innovative solutions, global best practices, and a unique, integrated business model, specifically developed to service an international clientele in the apparel, automotive, consumer products, energy, entertainment, food and drug, finance, government, insurance, legal, luxury goods, media, medical products,

4

retail, and technology sectors.  With the resources to deliver anywhere in the world, PICA has operatives on the ground worldwide, maintains 22 fully-staffed regional offices, and supervises projects each year on behalf of Global 500 companies, governmental agencies, and non-governmental organizations.

11. As a part of its asset protection services, PICA assists clients to ensure the safety of their personnel and property.  PICA works with clients' security personnel to design a protection methodology and uses fully-licensed and trained armed and unarmed security agents to undertake close protection assignments.  The services offered by or through PICA include:

- 24-hour contact personnel
- GPS personnel tracking
- armed or unarmed security escorts
- security drivers
- armored vehicles
- on-site security surveys
- countermeasure training
- 24-hour contact personnel in each regional office
- electronic eavesdropping countermeasures
- corporate travel advisories
- threat assessment and vulnerability studies
- protection workshops for corporate executives
- 24-hour crisis response services in the event of any sort of crisis, threat, or travel-related issue
- 24-hour emergency medical support and evacuation services

PICA's approach is to analyze the risks associated with planned activities in advance, and then integrate non-invasive security protocols and technology into the client's lifestyle to address those risks, its primary goal being to ensure the safety of its clients without creating a disruptive or restrictive security presence.

12. In or around 2011, PICA launched a new security service known as GUARDIAN ANGEL®. Through the GUARDIAN ANGEL® service, PICA protects, tracks, locates, and monitors personnel, vehicles, cargo, and other assets for clients. PICA monitors GPS, mobile phone, smart device, panic notification, and other geolocation devices and notifies employers, families, emergency responders, and other emergency contacts when appropriate. In the event vehicles, cargo, or other assets are stolen, PICA assists in locating and recovering them.

13. PICA's GUARDIAN ANGEL® service provides intelligence, secure monitoring, and a coordinated response to threats against personnel and cargo moving through areas lacking a strong and reliable governmental security presence. GUARDIAN ANGEL® integrates real-time tracking of covered subjects with the capability to send distress signals in the event of a kidnapping, hostile takeover, theft, or other similar event. From PICA's secure monitoring station, PICA's GUARDIAN ANGEL® service coordinates the response to the threat by summoning an appropriate level of countermeasures, ranging from a private QRF (Quick Reaction Force) to governmental intervention (Army, Navy, National Police, etc.). Each response is determined by taking into account real-time intelligence, on-the-ground data, and other proprietary information to provide a secure, reliable solution for PICA's clients.

14. PICA's GUARDIAN ANGEL® service combines (1) technology, including portable GPS tracking devices and panic devices, (2) human intelligence, including an active network of touch points positioned along main service routes providing real-time information on

transnational criminal organization activity and monitoring of social media feeds, and (3) quick reaction force, including government/private sector response, continuous liaison with appropriate authorities, and providing the quick reaction force with real-time data on the incident in order to increase probability of success.

15. On March 23, 2015, PICA applied with the USPTO to federally register GUARDIAN ANGEL, and on December 29, 2015, the USPTO issued United States Registration No. 4,877,016 (the "'016 Registration") for the GUARDIAN ANGEL® mark for:

> Security services, namely, tracking, locating, and monitoring of drivers, commercial vehicles and cargo, to track their geographical location for emergency response purposes and recovery, through the use of a remote monitoring center; emergency response alarm monitoring of GPS tracking devices, cell phones, and panic notification devices on commercial drivers and vehicles to track their geographical location and notify emergency responders when appropriate; stolen vehicle recovery.

A true and correct copy of the registration certificate is attached hereto as **Exhibit 1**. The '016 Registration is valid and subsisting, and has not been cancelled, revoked, or abandoned.

16. PICA owns valuable rights and goodwill in its GUARDIAN ANGEL® mark, which PICA has used continuously since 2011 in connection with the sale of the foregoing and related services.

17. PICA has expended a great deal of time and funds building and promoting its business using the GUARDIAN ANGEL® mark resulting in substantial goodwill and consumer recognition.

18. As a result of PICA's sales and advertising of its services under the GUARDIAN ANGEL® mark, the widespread sale and rendition of such services to PICA's clients under the mark, and the quality of the services rendered and sold under the mark, such services have come to be, and now are, well and favorably known to the trade and relevant consumers under the

GUARDIAN ANGEL® mark.  The GUARDIAN ANGEL® mark is a means by which such services are identified as being sold and rendered by PICA.

19. As a result of PICA's sales and advertising of its services under the GUARDIAN ANGEL® mark, and the quality of the services sold and rendered under the mark, valuable goodwill in the business as represented by the GUARDIAN ANGEL® mark has been generated. The goodwill is symbolized by the GUARDIAN ANGEL® mark, and PICA is the owner of the goodwill and the mark.

### PICA's Relationship with TigerSwan

20. PICA and TigerSwan explored and pursued certain business opportunities together from 2009 to 2014.

21. The first agreement between PICA and TigerSwan was a Confidentiality and Non-Disclosure Agreement (the "NDA") dated July 30, 2009, whereby PICA and TigerSwan anticipated disclosing confidential information to one another for the purpose of forming an alliance in hopes of leveraging their government and private sector experience for mutual gain. The NDA recited that it was between PICA Corporation and TigerSwan, Inc., "PICA Corporation" being the name under which PICA sometimes does business and TigerSwan at the time being a corporation.  The NDA was governed by Ohio law, and the parties agreed in the NDA that all disputes would be litigated exclusively in the federal or state courts located in Franklin County, Ohio.  A true and correct copy of the NDA is attached hereto as **Exhibit 2**.

22. Over the next 5 years, PICA and TigerSwan did business and entered into various contracts together.  The last agreement between PICA and TigerSwan was a Subcontract Agreement (the "Subcontract") dated October 2, 2012, whereby TigerSwan agreed to act as a

subcontractor to PICA. The Subcontract was likewise governed by Ohio law. A true and correct copy of the Subcontract is attached hereto as **Exhibit 3**.

23. By 2011, PICA was publicly offering its GUARDIAN ANGEL® service.

24. At no time during the term of the relationship between PICA and TigerSwan from 2009 to 2014 was PICA aware of TigerSwan offering any services under the mark GUARDIANANGEL.

### TigerSwan's Infringement

25. Despite PICA's common law rights and federal trademark registration for the GUARDIAN ANGEL® mark, PICA has become aware that TigerSwan has begun using the confusingly similar mark GUARDIANANGEL for services that are the same as, or closely related to, PICA's GUARDIAN ANGEL® services.

26. By virtue of TigerSwan's use of the GUARDIANANGEL mark, TigerSwan is infringing upon PICA's GUARDIAN ANGEL® mark and unfairly competing with PICA. TigerSwan's use in connection with its business of the GUARDIANANGEL mark is likely to cause confusion, mistake, or deception among the trade and relevant consumers.

### TigerSwan's Fraudulent Registration

27. PICA became aware of TigerSwan's use of its infringing GUARDIANANGEL mark when PICA received a cease and desist letter from TigerSwan referencing a federal registration that TigerSwan had procured for its GUARDIANANGEL mark and claiming that PICA was infringing TigerSwan's trademark rights. A true and correct copy of TigerSwan's cease and desist letter is attached hereto as **Exhibit 4**.

28. On May 19, 2016, long after PICA had first used and federally registered the GUARDIAN ANGEL mark, TigerSwan applied to register GUARDIANANGEL for:

9

> Security consultancy; security services, namely, providing protection for individuals or locations; security services, namely, providing security assessments of physical locations, information systems, or working environments; security services, namely, threat simulation vulnerability analysis and mitigation and emergency and crisis response.

In the application TigerSwan falsely claimed (1) to have been using the GUARDIANANGEL mark for these services since at least June 30, 2011, and (2) that "no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." A true and correct copy of TigerSwan's application is attached hereto as **Exhibit 5**. Both of these statements were false. TigerSwan was not using the GUARDIANANGEL mark in 2011, and was well aware at the time it filed its application for registration of GUARDIANANGEL of PICA's use of the GUARDIAN ANGEL® mark for these same or very closely related services.

29. On September 6, 2016, TigerSwan received an Office Action from the USPTO initially refusing registration of GUARDIANANGEL because of a likelihood of confusion with PICA's GUARDIAN ANGEL® mark in the '016 Registration.

30. On March 6, 2016, TigerSwan responded with argument in favor of registration of GUARDIANANGEL. A true and correct copy of TigerSwan's response to the Office Action is attached hereto as **Exhibit 6**.

31. TigerSwan argued in the response that:

> Registrant is providing GPS tracking services for supply chain management. The "security" is in terms of peace of mind, since the goods are being tracked as they travel through commerce. All of the services covered by the registration hinge on the GPS-driven asset <u>tracking</u>.

10

*See* **Exhibit 6**. TigerSwan further referred to PICA's customers for its GUARDIAN ANGEL® service as "supply chain managers at major corporations" that are looking for "a company to track your cargo during shipping." PICA's GUARDIAN ANGEL® services were and are much broader than TigerSwan represented at the time TigerSwan made these arguments to the USPTO. A printout of a screenshot of PICA's web page advertising its GUARDIAN ANGEL® services on March 5, 2016 stored on the Internet Archive is attached hereto as **Exhibit 7**. TigerSwan, being a former business partner of PICA's and well-aware of PICA's business, was aware that these statements to the USPTO were false.

32. In addition, in its response TigerSwan restated the identification of services for which it was seeking registration of GUARDIANANGEL to:

> Security consultancy, namely, providing pre-travel risk mitigation plans and emergency action plans; security services, namely, providing international travel protection for individuals or locations; security services, namely, providing pre-travel security assessments of physical locations, information systems, or working environments; security services, namely, threat simulation vulnerability analysis and mitigation and emergency and crisis response for individuals travelling internationally.

and argued to the USPTO that its services were different from PICA's because:

> In contrast, Applicant is offering boots-on-the-ground physical "security," bodyguards, anti-terrorist protection, and crisis response. Customers would contact Applicant before traveling to a potentially dangerous location (such as Iraq), and Applicant would assess the likelihood of a physical threat to the individual, then develop and implement a strategy for protecting the individual from attacks, kidnapping, or other physical risks.

*See* **Exhibit 6**. This was a misrepresentation of TigerSwan's GUARDIANANGEL services, which services rely on software, mobile applications, GPS tracking, panic notifications, a remote monitoring and response center, and local law enforcement and political agencies just the same as PICA's GUARDIAN ANGEL® services. A printout of a screenshot of TigerSwan's entire

11

web page advertising its GUARDIANANGEL services on March 5, 2016 stored on the Internet Archive is attached hereto as **Exhibit 8**. TigerSwan presented only a portion of this advertisement to the USPTO, and specifically not the portions about its GUARDIANANGEL mobile application and emergency assistance beacons. As a result, TigerSwan's argument to the USPTO was false and supported by a misleading specimen of use for its GUARDIANANGEL services.

33. As a result of TigerSwan's false statements and omissions, the USPTO was misled into withdrawing its refusal to register, and on July 4, 2017, the USPTO issued United States Registration No. 5,235,083 (the "'083 Registration") for GUARDIANANGEL to TigerSwan. A true and correct copy of registration details for the '083 Registration from the USPTO's Trademark Electronic Search System are attached hereto as **Exhibit 9**.

34. TigerSwan is now asserting this fraudulently procured registration against PICA.

35. TigerSwan is further intentionally, actively, and deliberately using the GUARDIANANGEL mark, and intentionally and deliberately infringing PICA's trademark rights and engaging in acts of unfair competition with PICA.

36. TigerSwan's intentional infringement of PICA's trademarks and unfair competition is causing irreparable injury to PICA, and, unless an injunction is granted, will continue to cause irreparable injury to PICA due to the confusion, mistake, and deception that will be and has been generated among the trade and relevant consumers. PICA has suffered and will continue to suffer damage, the exact amount of damage being unknown to PICA at this time. The damage to PICA is, and will continue to be, irreparable because, among other reasons, of the continuing nature of the trademark infringement and unfair competition, which would necessitate a multiplicity of suits for damages if the continuance of the wrongs is not enjoined.

37. All conditions precedent to the institution and maintenance of this action have occurred or been performed by PICA.

38. PICA has engaged the law firm of Shumaker, Loop & Kendrick, LLP to represent it and has obligated itself to pay its attorneys a reasonable fee for their services in this action.

## COUNT I
### Federal Trademark Infringement

39. PICA realleges paragraphs 1-38 of this Complaint as if fully restated herein.

40. This is an action for an injunction arising under 15 U.S.C. §§ 1114 and 1116, and for damages arising under 15 U.S.C. §§ 1114 and 1117.

41. TigerSwan has, by virtue of its above-described acts, infringed upon PICA's rights in its federal trademark registration of the GUARDIAN ANGEL® mark in violation of 15 U.S.C. § 1114.

42. TigerSwan's above-described acts of infringement have been committed, and are continuing to be committed, with the knowledge that its GUARDIANANGEL mark is intended to be used to cause confusion, or to cause mistake, or to deceive.

43. TigerSwan's above-described acts of infringement have caused irreparable injury to PICA and will continue to cause irreparable injury to PICA if TigerSwan is not restrained by this Court from further violating PICA's trademark rights due to the confusion, mistake, or deception that will likely be generated among the trade and relevant consumers as a consequence of the above-described acts of infringement.  PICA has no adequate remedy at law.

## COUNT II
### Federal Unfair Competition

44. PICA realleges paragraphs 1-43 of this Complaint as if fully restated herein.

45. This is an action for an injunction arising under 15 U.S.C. §§ 1125 and 1116, and for damages arising under 15 U.S.C. §§ 1125 and 1117.

46. TigerSwan has, by virtue of its above-described acts, infringed upon PICA's federally registered and common law rights in its GUARDIAN ANGEL® mark and is competing unfairly with PICA by falsely designating TigerSwan's services as originating with PICA or with a concern legitimately connected with Plaintiff in violation of 15 U.S.C. § 1125.

47. TigerSwan's above-described acts of infringement and unfair competition have been committed, and are continuing to be committed, with the knowledge that its GUARDIANANGEL mark is intended to be used to cause confusion, or to cause mistake, or to deceive.

48. TigerSwan's above-described acts of infringement and unfair competition have caused irreparable injury to PICA and will continue to cause irreparable injury to PICA if TigerSwan is not restrained by this Court from further violating PICA's trademark rights and competing unfairly with PICA due to the confusion, mistake, or deception that will likely be generated among the trade and relevant consumers as a consequence of the above-described acts of infringement and unfair competition.  PICA has no adequate remedy at law.

### COUNT III
### Common Law Trademark Infringement and Unfair Competition

49. PICA realleges paragraphs 1-48 of this Complaint as if fully restated herein.

50. This is an action for an injunction and for damages arising under Ohio common law.

51. PICA owns valuable common law rights and goodwill in its GUARDIAN ANGEL® mark as a result of its continuous commercial use of the mark in Ohio and elsewhere.

52. TigerSwan has, by virtue of its above-described acts, infringed upon PICA's common law trademark rights and unfairly competed with PICA.

53. TigerSwan's above-described acts of infringement have been committed, and are continuing to be committed, with the knowledge that its GUARDIANANGEL mark is intended to be used to cause confusion, or to cause mistake, or to deceive.

54. TigerSwan's above-described acts of infringement have caused irreparable injury to PICA and will continue to cause irreparable injury to PICA if TigerSwan is not restrained by this Court from further violating PICA's trademark rights due to the confusion, mistake, or deception that will likely be generated among the trade and relevant consumers as a consequence of the above-described acts of infringement. PICA has no adequate remedy at law.

## COUNT IV
### Cancellation of a Federal Trademark Registration

55. PICA realleges paragraphs 1-54 of this Complaint as if fully restated herein.

56. This is an action for cancellation of a federal trademark registration pursuant to 15 U.S.C. § 1119.

57. PICA is entitled to cancellation of TigerSwan's '083 Registration of GUARDIANANGEL because it was granted improperly and is so similar as to be likely to cause confusion or mistake or to deceive with PICA's GUARDIAN ANGEL® mark.

58. PICA will be and is being damaged by TigerSwan's use and registration of GUARDIANANGEL.

## PRAYER FOR RELIEF

WHEREFORE, PICA demands the following:

(a) With respect to Counts I and II, a judgment:

15

   (1) entering an injunction preliminarily during the pendency of this action and thereafter permanently enjoining and restraining TigerSwan, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing PICA's trademark rights and unfairly competing with PICA in any manner whatsoever in connection with the operation of its business, and from continuing to operate their business in any manner tending to confuse or deceive the public into believing that their business is in any way connected with, sponsored by, or affiliated with PICA;

   (2) ordering an accounting of and awarding PICA such damages, lost profits, royalties, attorneys' fees, costs, and prejudgment interest, as may be shown by the evidence;

   (3) awarding up to three (3) times any damages sustained by PICA;

   (4) awarding PICA interest on such profits and damages at the highest rate allowed by law;

   (5) awarding PICA costs of this action;

   (6) awarding PICA its reasonable attorneys' fees and costs; and

   (7) awarding PICA such other and further relief as the Court deems just and proper.

 (b) With respect to Count III, a judgment:

   (1) entering an injunction preliminarily during the pendency of this action and thereafter permanently enjoining and restraining TigerSwan, its officers, agents, servants, employees, and attorneys, and all other persons in active

    concert or participation with them, from infringing PICA's trademark rights and unfairly competing with PICA in any manner whatsoever in connection with the operation of its business, and from continuing to operate their business in any manner tending to confuse or deceive the public into believing that their business is in any way connected with, sponsored by, or affiliated with PICA;

 (2) ordering an accounting of and awarding PICA such damages, lost profits, royalties, attorneys' fees, costs, and prejudgment interest, as may be shown by the evidence;

 (3) awarding PICA interest on such profits and damages at the highest rate allowed by law;

 (4) awarding PICA costs of this action; and

 (5) awarding PICA such other and further relief as the Court deems just and proper.

(c) With respect to Count IV, a judgment:

 (1) canceling TigerSwan's '083 Registration of GUARDIANANGEL;

 (2) awarding PICA costs of this action;

 (3) awarding PICA its reasonable attorneys' fees and costs; and

 (4) awarding PICA such other and further relief as the Court deems just and proper.

Dated: December 20, 2017   Respectfully submitted,

/s/ Brian A. Coulter
Brian A. Coulter (0092158), Trial Attorney
SHUMAKER, LOOP & KENDRICK, LLP
41 South High Street, Suite 2400
Columbus, Ohio 43215
Telephone:    614.463.9441
Facsimile:    614.463.1108
E-mail:       bcoulter@slk-law.com

Attorney for Plaintiff Professional Investigating & Consulting Agency, Inc.

Of Counsel:

J. Todd Timmerman (FL Bar No. 0956058)
Mindi M. Richter (FL Bar No. 00044827)
Jeffrey B. Fabian (FL Bar No. 0085868)
SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, Florida 33602
Telephone:    813.229.7600
Facsimile:    813.229.1660
E-mail:       ttimmerman@slk-law.com
              mrichter@slk-law.com
              jfabian@slk-law.com