# EXHIBIT 3

## SUBCONTRACT AGREEMENT

This Subcontract Agreement ("Agreement") is made as of October 2, 2012 by and between **Professional Investigating & Consulting Agency, Inc., d/b/a PICA Corporation**, an Ohio corporation, with offices at 551 S. Third, Columbus, Ohio 43215,USA (hereinafter referred to as "PICA"), and **TigerSwan, Inc.,** a Colorado Corporation, with offices at 3452 Apex Peakway, Apex, NC 27502 (hereinafter referred to as "Subcontractor"; PICA and Subcontrator are each a "Party" and are collectively referred to as the "Parties").

## RECITALS

WHEREFORE, PICA is a United States-based corporation engaged in the delivery of professional services, including but not limited to, Security Consulting, Brand Protection, Loss Prevention, Risk Management, Personnel & Asset Security, Business Intelligence, and Maritime Counter-Piracy services. Although based in the United States, PICA and its related companies have devised, extensively marketed, popularized and successfully put into operation on a global basis, through various offices and licensees in the United States, Argentina, Brazil, China, Colombia, Hong Kong, India, Italy, Mexico, Panama, Peru, and the United Kingdom, and through a network of resident consultants and Subcontractors in major metropolitan areas worldwide, a unique "Service System" (hereinafter "Service System") recognized as programmed marketing and delivery of Security Consulting, Brand Protection, Loss Prevention, Risk Management, Personnel & Asset Security, Business Intelligence, and Maritime Counter-Piracy services;

WHEREFORE, TigerSwan desires to formalize its retention by PICA in the capacity of a Subcontractor, and PICA desires to retain Subcontractor in such capacity.

WHEREFORE, Subcontrator and PICA desire to set forth in writing their agreements and understandings regarding the work Subcontractor performs on behalf of PICA and PICA clients;

WHEREFORE, Subcontrator and PICA also desire to set forth the terms and conditions governing any new business development for PICA which requires Subcontrator's participation under the auspices of this Agreement;

WHEREFORE, the Parties agree that the territory of performance by Subcontrator under the terms of this Agreement shall be non-exclusive and shall be more fully set forth in each specific assignment provided by PICA to Subcontractor;

NO THEREFORE, in mutual consideration of the promises and performances of the other, and in recognition of adequate consideration by Subcontractor, the receipt of which is hereby acknowledged, Subcontractor and PICA each agree to the following terms and conditions of the engagement set forth herein.

PD.7848823.2

Page 1 / 7



## Terms and Conditions

**(1) Term of Contract:** Subcontractor is hereby retained by PICA on a month-to-month basis, in the capacity of a non-exclusive Subcontractor commencing on October 2, 2012 unless terminated sooner in accordance with paragraph 8 of this Agreement.

**(2) Renewal of Contract Term:** This contract shall renew month-to-month unless terminated sooner in accordance with paragraph 8 of this agreement.

**(3) Duties of Subcontractor:** During the term of this Agreement, including any renewal terms, Subcontractor shall have such authority and shall perform such duties as may from time-to-time be assigned by the officers or directors of PICA and are consistent with the terms of this Agreement. The nature and extent of Subcontractor's authority and duties shall be mutually determined by the officers or directors of PICA as well as the officers and of diretors of TigerSwan for the benefit of the parties involved. Subcontractor shall not incur any expenses in excess of $100 USD on behalf of PICA without the prior consent of the officers of PICA or their designated representative. Subcontractor agrees to discharges its duties in full compliance with the United States Foreign Corrupt Practices Act, 15 U.S.C. §§78dd-1, *et seq.* and all applicable laws and standards of conduct for the territory in which it operates.

**(4) Accounting for Services:** Subcontractor shall provide an accounting of all time and best efforts in the performance of Subcontractor's duties under this Agreement. Subcontractor shall report to the designee of or officers of PICA. Reporting format shall be as required by PICA.

**(5) Compensation as a Subcontrator:** Subcontrator's compensation from PICA under this Agreement shall be as follows:

  a. **Compensation:** Projects will be quoted and billed at a rate that is pre-agreed by the Parties in advance, in writing, with deliverables, expectations and limits defined. All hours must be authorized and approved by the officers or directors of PICA prior to payment. This compensation model shall remain in effect for the term of this agreement, including any renewal terms.

  b. **Benefits:** Subcontractor **shall not** be entitled to participate in any benefit programs (such as group life insurance, hospitalization or health insurance, professional liability insurance, professional association or club memberships, and vacation programs) as are presently or may hereinafter be provided by PICA to its employees.

  c. **Reimbursement For Expenses:** If approved by the designee of or officers of PICA, which approval shall rest in their individual sole discretion and business judgment, PICA shall pay or reimburse Subcontractor for actually incurred expenses for travel, meals, hotel accommodations, and other similar expenses incurred by Subcontractor in connection with the performance of Subcontractor's duties for PICA. PICA will not be obligated to reimburse for expenses that are not accompanied by receipts.

**(6) Independent Contractor Status:** Subcontractor acknowledges that it is retained as an

independent contractor in relation to PICA and as such will be responsible for payment of its payroll taxes and insurance and all income, sales, VAT or related governmental taxes of the Country or the Territory where services under this Agreement are performed. Upon request, Subcontrator shall provide proof of adequate insurance in the territory in which Subcontractor performs services to cover all risks relative to the performance of its duties under this Agreement.

**(7) Subcontrator Work Product:** Subcontractor acknowledges and agrees that any work product developed in whole or in part by Subcontractor during the term of this Agreement arising from any assignment made by PICA to Subcontractor shall at all times be the sole and exclusive property of PICA and Subcontrator shall have no claim of ownership thereto. For purposes of this Agreement, "work product" shall include, but not be limited to, any and all reports relevant to the specific project being worked on by the Subcontractor. PICA acknowledges and agrees that Subcontractor shall have the right to retain copies of all work product related to its performance under this Agreement, for purposes of compliance with national and international standards of conduct and laws related to documentation and archiving in the industry and in defense of claims in full compliance with paragraph 10 (a) of this agreement.

**(8) Retained Copies License**. (a) PICA and Subcontractor's agents and contractor information, training materials and/or software prepared prior to commencement of the term of this Agreement, or prior to Subcontractor's earlier commencement of the Services if work begins earlier, that are delivered to PICA or a PICA Affiliate pursuant to this Agreement, but that are not included in the above definition of Materials, if any, are defined as "Pre-Existing Materials". (b) Ownership of such Pre-Existing Materials shall be retained by each respective party. Neither perty shall retain copies of Pre-Existing Materials notwithstanding any return obligation under the termination sections of this Agreement. (c) The parties warrant and acknowledge as a condition of this Agreement that they have the rights necessary to convey these Pre-Existing Materials rights for the execution of this agreement.

**(9) Termination of Agreement:** This agreement may be terminated with 30 days written notice by either Party without cause.

**(10) Surrender of Property Upon Termination:** Subcontractor acknowledges that all files, records, literature, work product, evidence and other materials and property owned by PICA or used by it in connection with its business shall at all times remain the property of PICA and Subcontractor shall not have any claim of ownership thereto. Upon termination of this Agreement (regardless of whether such termination is voluntary or involuntary or at the insistence of PICA or Subcontractor) Subcontrator shall immediately surrender to PICA all such property and, if requested by PICA, provide a written statement accounting for the use or disposition of any such property. PICA acknowledges that all files, records, literature, work product, evidence and other materials and property owned by Subcontracor used by it in connection with its business shall at all times remain the property of Subcontractor and PICA shall not have any claim of ownership thereto, not withstanding the "work product" as stated herein. Upon termination of this Agreement (regardless of whether such termination is voluntary or involuntary or at the insistence of Subcontractor, PICA shall immediately surrender to Subcontractor all such property and, if requested by Subcontractor, provide a written statement accounting for the use or disposition of any such property.

**(11) Covenants By Subcontrator:** PICA and Subcontrator covenant and agree as follows and agree to bind in a similar manner, in writing, and be liable for, any breaches by all their respective employees, independent contractors and vendors with access to confidential and proprietary information, including client lists and client access and relations with employees. The Parties shall undertake reasonable efforts to enforce these Covenants by requiring their employees, independent contractors and vendors (as applicable) to execute a written agreement acknowledging the obligation to protect such information and setting forth PICA and Subcontrator as named third party beneficiaries. **Incorporating the foregoing, therefore, PICA and Subcontrator covenant and agree as follows**:

**Non-Disclosure:**

(a) PICA and Subcontrator hereby acknowledge and understand that during the course their prior association and the performance of this Agreement, PICA and Subcontrator will have access to and become familiar with confidential and proprietary information, trade secrets and intellectual property belonging to the other Party. PICA and Subcontrator further acknowledge and understand that unauthorized disclosure of such confidential and proprietary information and trade secrets will cause immediate and irreparable harm to the disclosing Party's business, goodwill, and clients. PICA and Subcontrator therefore covenant and agree that during the term of this Agreement and at any time after termination of this Agreement (regardless of whether such termination is voluntary or involuntary or at the insistence of PICA or Subcontrator; and further regardless of whether such termination is with or without cause), PICA and Subcontrator will not, without first obtaining the express written consent of the other Party, disclose to or use for their benefit, or the benefit of any person, business, any confidential or proprietary information or trade secrets belonging to the other Party whether received during their prior association or the term of this Agreement.

For purposes of this Agreement, Confidential and proprietary Information and Intellectual property will include but not be limited to all information related to the aforementioned purposes and which is identified as Proprietary Information, including, but not limited to, processes, procedures, technical information in the form of designs, concepts, requirements, specifications, software, interfaces, components, processes, or other tangible or intangible form, consisting of business, technical, financial, employment or personal information of the Company or of any customer, vendor, consultant, advisor or other third party with whom the Company has or is contemplating a business relationship or other engagement ("Third Parties"), whether or not marked or otherwise identified as confidential or proprietary. Confidential Information includes, but is not limited to: data, technology, know-how, Inventions, Creative Works, discoveries, designs, processes, formulations, models, equipment, algorithms, computer programs and software, in object code and source code, and any derivative works, modifications, fixes and enhancements thereto, cost information, interfaces, technical documentation, product manuals, specifications, trade and business secrets, marketing and business plans, forecasts, projections and analyses, financial analyses and financial statements, sales, pricing and customer information, employee and other personnel information or data, customer technical requirements, requests for proposals, installation and service procedures, maintenance and support programs, contracts, legal tactics and attorney work product and information consisting of, concerning, or relating to

research and development work, current, future, planned or proposed products and pre-release devices.

**(b) Non-Solicitation of Clients:** For a period of two (2) years following termination of this Agreement (regardless of whether such termination is voluntary or involuntary or at the insistence of PICA or Subcontrator; and further regardless of whether such termination is with or without cause), PICA and Subcontrator further covenant and agree that they will not directly or indirectly, acting alone or with others, solicit, call upon, sell, provide or make services available to, any business or person who (i) has been introduced by the other Party during the execution of the provision of services under this Agreement, and/or (ii) is a Client of the other Party.

For purposes of this Agreement, "Client" shall mean any person or business for or through whom PICA or Subcontrator provides professional services including, but not limited to, Security Consulting, Brand Protection, Loss Prevention, Risk Management, Personnel & Asset Security, Business Intelligence, and Maritime Counter-Piracy services. Upon termination of this Agreement, a list of Client which are within the restrictions of the above paragraph will be provided by the Parties, and PICA and Subcontrator shall at all times thereafter maintain such list in the strictest confidence in accordance with paragraph 10(a) of this Agreement.

**(c) Non-Solicitation of Employees/Independent Contractors:** During the term of this Agreement, including any renewal terms, and for a period of two (2) years following termination of this Agreement (regardless of whether such termination is voluntary or involuntary or at the insistence of PICA or Subcontrator; and further regardless of whether such termination is with or without cause), PICA and Subcontrator further covenant and agree that they will not interfere with or directly or indirectly solicit or induce any employee or independent contractor of the other Party to terminate his or her relationship with the employing Party or to offer employment or independent contractor status with their company to any other person or business that is in competition with the other Party for clients.

**(d) Attorney Fees:** In the event that PICA or Subcontrator commence litigation for violation of any of the covenants set forth in paragraphs 10(a) through 10(c) of this Agreement, the prevailing Party (by preliminary or permanent injunction, judgment, consent decree or settlement which limits or restrains the other Party in any manner or requires any payment of any amount), shall be entitled to reimbursement for all costs and attorney fees incurred in connection with such litigation.

**(e) Acknowledgment By PICA:** PICA has carefully reviewed the nature and extent of the restrictions placed upon PICA and the rights and remedies conferred upon Subcontrator under this Agreement, and hereby acknowledges and agrees that the same are reasonable in time, scope and territory, are designed to eliminate competition which would be unfair to Subcontrator, are fully required to protect the legitimate interests of Subcontrator, and do not confer a benefit upon Subcontrator disproportionate to the detriment to PICA.

**(f) Acknowledgment By Subcontrator:** Subcontrator has carefully reviewed the nature and extent of the restrictions placed upon Subcontrator and the rights and remedies conferred upon PICA under this Agreement, and hereby acknowledges and agrees that the same are reasonable in time, scope and territory, are designed to eliminate competition which would be unfair to PICA, are fully required to protect the legitimate interests of PICA, and do not confer a benefit upon PICA disproportionate to the detriment to Subcontrator.

**(g) Survival of Covenants:** The provisions of this paragraph, including but not limited to the covenants set forth in paragraphs 10(a) through 10(c) shall survive any termination of this Agreement.

**(12) Severability:** If any provision of this Agreement shall be held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

**(13) Assignment:** PICA may assign this Agreement with the consent of Subcontrator, which may not unreasonably be withheld, in the event that it sells all or substantially all of its assets to a third party. Subcontrator may not assign this Agreement without the written consent of PICA.

**(14) Notices:** Any notices required by this Agreement shall be given in writing, delivered in person or at the addresses set forth at the beginning of this Agreement or electronically if mutually agreed upon by all parties.

**(15) Governing Law:** All questions concerning the meaning and validity of this Agreement and all questions relating to any performance or breach hereunder shall be judged and resolved in accordance with the laws of the State of Ohio, United States of America.

**(16) Entire Agreement:** This document constitutes the entire agreement between the parties. No agreements or understandings concerning the subject matter herein have been made by the parties other than as set forth in this Agreement.

**(17) Modification:** No changes, waivers, alterations, modifications or qualifications to the terms of this Agreement shall be made or be binding unless made in writing and signed by Subcontrator and the CEO or CSO of PICA.

**(19) Waiver:** Except as otherwise expressly provided herein, neither any failure nor any delay on the part of any party to this Agreement in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise of any other rights, powers or privileges.

In Witness Whereof, the parties have executed the foregoing Agreement the day and year written below.

Signature of the Subcontrator verified this 2nd day of October 2012.

Professional Investigating & Consulting Agency, Inc.

By: _____

Name: Vaughn Volpi
Title: Chief Strategy Officer


TigerSwan, Inc.

By: _____

Name: James P. Reese

Title: Chief Executive Officer